IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TETRA CORPORATE SERVICES, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CAPITALPLUS EQUITY, LLC, a Nevada limited liability company; CAPITALPLUS FINANCIAL, LLC, a Tennessee limited liability company; CAPITALPLUS SUPPLY CHAIN PARTNERS, LLC, a Tennessee limited liability company; SCOTT APPLEGATE, an individual; CAPITALPLUS FINANCIAL SERVICES, LLC, a Tennessee limited liability company; CAPITALPLUS SUPPLY, LLC, a Tennessee limited liability company; CAPITALPLUS CONSTRUCTION SERVICES, LLC, a Delaware limited liability company; CAPITALPLUS SUPPLY CHAIN PARTNERS SPV 1, LLC, a Delaware limited liability company; JAG FINANCIAL, LLC, a Tennessee limited liability company; JAG GROUP, LLC, a Tennessee limited liability company; APPLEGATE FAMILY PARTNERSHIP, LP, a Tennessee limited partnership; and MATPRO SUPPLY, LLC, a Tennessee limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Case No. 2:24-cv-00399-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Before the court is the Defendants' Motion to Dismiss the Second Amended Complaint. (ECF No. 65.) For the reasons stated below, the court denies the motion.

## BACKGROUND

On March 17, 2026, Plaintiff Tetra Corporate Services, LLC (TCS) filed a Second Amended Complaint (SAC), in which it added four Defendants who had not previously been part of this action: JAG Financial, LLC (JAG Financial); JAG Group, LLC (JAG Group); Applegate Family Partnership, LP (Applegate Partnership); and MatPro Supply, LLC (MatPro). (SAC, ECF No. 54.) Three of these Defendants (JAG Financial, JAG Group, and Applegate Partnership) move to dismiss the SAC on the grounds that the court may not exercise personal jurisdiction over them and that TCS fails to state a claim against them.

The court previously denied a motion to dismiss the First Amended Complaint filed by the other eight Defendants in the action. (Mem. Decision & Order, ECF No. 40.) In that order, the court recited the factual background. (See id. at 1–4.) The court repeats the relevant facts below, with updated reference to the SAC.

On November 3, 2004, TCS signed a promissory note (the Note) with Defendant Capitalplus Equity, LLC (CP Equity). (SAC ¶ 31.) As of May 1, 2021, CP Equity owed TCS $2,800,000.00 under the Note. (Id.) On that date, TCS and CP Equity signed a Sixteenth Amendment to the Note (the Amended Note). (Id. ¶ 32.) The Amended Note stated that CP Equity would "make monthly payments of $76,000 of principal and interest on the first day of each calendar month beginning on June 1, 2021" and would repay "all principal due under the Note on or before May 1, 2024." (Id. ¶ 33.) The Amended Note included a Guarantee signed by three guarantors: Capitalplus Financial, LLC (CP Financial); Capitalplus Supply Chain Partners, LLC (CP Supply Chain); and Scott Applegate (collectively, the Guarantee Defendants). (Id. ¶¶ 3–6, 37.)

TCS alleges that CP Equity breached the Amended Note when it failed to make a payment in April 2023 or any subsequent payments. (Id. ¶ 38–39.) TCS further alleges that the Guarantee Defendants breached the Guarantee. (Id. ¶ 43.)

In addition, TCS maintains that CP Equity and the Guarantee Defendants used other previously formed and new corporate entities as fraudulent alter egos to avoid CP Equity's repayment obligations. (Id. ¶ 44.) Similar to the allegations in the First Amended Complaint, TCS continues to maintain in the SAC that CP Equity and the Guarantee Defendants established the following four entities: 1) Capitalplus Construction Services, LLC (CP Construction) in July 2018; 2) Capitalplus Supply Chain Partners SPV 1, LLC (CP Supply SPV) in February 2021; 3) Capitalplus Financial Services, LLC (CP Services) in March 2023; and 4) Capitalplus Supply, LLC (CP Supply) in June 2023. (Id. ¶¶ 45, 48–50.) Collectively, TCS refers to these entities as the "Original Fraudulent Transfer/Alter Ego Defendants" (Original Alter Ego Defendants). (See id. ¶ 52.)

In the SAC, TCS adds three additional Defendants to this list:

> Since Defendants CP Equity and the Guarantee Defendants breached the Amended Note, and the Guarantee, Defendants JAG Group, JAG Financial, and Applegate Partnership have received payments from Defendants CP Equity, the Guarantee Defendants, and the Original Fraudulent Transfer/Alter Ego Defendants totaling hundreds of thousands, if not millions of dollars.

(Id. ¶ 52.)[1] TCS refers to these three Defendants as the "Additional Fraudulent Transfer/Alter Ego Defendants" (Additional Alter Ego Defendants). (See, e.g., id. ¶ 73.) TCS alleges that JAG Financial is an owner/operator of CP Supply, that Applegate Partnership is an owner/operator of CP Equity, and that Mr. Applegate is an owner/operator of JAG Group. (Id. ¶¶ 19–21.)

---

[1] The SAC also asserts that MatPro was established in late 2025 to continue the business efforts of CP Equity, the Guarantee Defendants, and the Original Alter Ego Defendants. (SAC ¶ 53.) It is not clear whether MatPro has been served and MatPro has yet to enter an appearance.

Like CP Equity and the Guarantee Defendants, TCS alleges that the Original and Additional Alter Ego Defendants all share a principal office address at 2510 Solway Road, Knoxville, Tennessee. (Id. ¶¶ 8, 73.)[2] The Original and Additional Alter Ego Defendants use the same website and telephone number as CP Equity and the Guarantee Defendants. (Id. ¶ 74–75.) The Original and Additional Alter Ego Defendants share the same employees, officers, and directors as CP Equity and the Guarantee Defendants. (Id. ¶¶ 76–77.) And the Original and Additional Alter Ego Defendants were all founded by Mr. Applegate. (Id. ¶ 78.)

TCS's central allegation against the Original and Additional Alter Ego Defendants is that CP Equity and the Guarantee Defendants transferred assets to these Defendants to avoid paying the outstanding debt on the Amended Note. (Id. ¶ 44.) To support this assertion, TCS notes that two of the Original Alter Ego Defendants were formed in March 2023 and June 2023, about the same time that CP Equity stopped making its monthly payment on the Amended Note. (See id. ¶¶ 39, 45, 48.) TCS also points to press releases indicating that some of the Original Alter Ego Defendants were pursuing business projects even when CP Equity and the Guarantee Defendants represented that they had no assets. (Id. ¶¶ 46, 51, 54.) For instance, a press release in February 2024 touted that CP Construction was a "provider of accounts receivable financing for the construction industry" and identified representative transactions of around $5 million. (Id. ¶ 51.) And a press release on April 2, 2024, stated that "CapitalPlus Financial Services, a

[2] The Additional Alter Ego Defendants maintain that TCS failed to allege that any of these Defendants shared CP Equity's "website, phone number, or principal office" or "shared employees or officers …." (ECF No. 65 at 6.) That is likely because the SAC's initial recitation of the allegations about shared offices and employees only references the Original Alter Ego Defendants. (See SAC ¶¶ 15–18.) But later, where TCS alleges alter ego liability, the SAC does include the Additional Alter Ego Defendants in allegations of shared offices and employees. (See id. ¶¶ 73–78.) The court finds that these allegations are sufficient to encompass the Additional Alter Ego Defendants.

leading provider of receivable financing of the construction industry, is pleased to announce the successful funding of a $1.25 million working capital facility for a finishing contractor based in Reno, Nevada." (Id. ¶ 46.)

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations in a complaint must raise a plausible right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And while factual allegations asserted in a complaint are accepted as true for purposes of a motion to dismiss, conclusory allegations in a complaint are not entitled to such deference and are insufficient to state a claim. Id.

## ANALYSIS

Relevant to the pending motion, TCS asserts a claim for violations of Utah's Uniform Voidable Transactions Act (UVTA), Utah Code Ann. § 25-6-101, et seq., against all Defendants. (SAC ¶¶ 66–71.) TCS also argues that the Original and Additional Alter Ego Defendants are liable under the theory of alter ego and/or successor liability. (Id. ¶¶ 72–82.)

The Additional Alter Ego Defendants move to dismiss the claims against them, arguing that the court lacks personal jurisdiction over them and that TCS has failed to state a claim against them under the UVTA.

### I. Personal Jurisdiction

In its order denying the Original Alter Ego Defendants' motion to dismiss, the court provided an extensive summary of the law relating to personal jurisdiction and found that the court could exercise specific personal jurisdiction over CP Equity and the Guarantee Defendants

on the basis of the Amended Note. (ECF No. 40 at 5–7.) The court further found that it was appropriate to "impute the jurisdictional contacts from one defendant to an alter ego defendant[.]" (Id. at 7 (citing Larada Sciences, Inc. v. Pediatric Hair Sols. Corp., No. 2:18-cv-551-RJS-JCB, 2023 WL 2043300, at *13 (D. Utah Feb. 16, 2023)). The relevant jurisdictional question, then, was whether TCS had adequately alleged an alter ego relationship between the Original Alter Ego Defendants and CP Equity and the Guarantee Defendants. (Id. at 8.)

The court noted that, under Utah law, TCS had to demonstrate two elements to succeed on an alter ego theory. First, there must be "such unity of interest and ownership that the separate personalities of the corporation no longer exist …." Norman v. Murray First Thrift & Loan Co., 596 P.2d 1028, 1030 (Utah 1979). In other words, "the corporation is, in fact, the alter ego of one or a few individuals …." Id. Second, TCS must show that "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." Id. The first element is known as the "formalities requirement," while the second element is called the "fairness requirement" and is addressed to the "conscience of the court." James Constructors, 761 P.2d at 47.

After a discussion of the factors that Utah courts consider when evaluating a claim predicated on the theory of alter ego liability, the court found that TCS had adequately pleaded facts establishing both the "formalities requirement" and the "fairness requirement" such that it was appropriate for the court to exercise jurisdiction over the Original Alter Ego Defendants. (Id. at 9–12.)

The allegations against Additional Alter Ego Defendants are nearly identical to the allegations against the Original Alter Ego Defendants. As was true in the First Amended Complaint, the SAC alleges that there is substantial overlap of ownership between CP Equity,

the Guarantee Defendants, and both the Original and Additional Alter Ego Defendants; that these Defendants use the same website and principal office; that these Defendants share the same officers and directors; and that all entity Defendants were founded by Mr. Applegate. In line with its previous order, the court therefore finds that TCS has plausibly alleged facts to support the "formalities requirement" of the alter ego analysis against the Additional Alter Ego Defendants.

Similarly, the court finds that TCS has alleged facts concerning the Additional Alter Ego Defendants that support the "fairness requirement" prong. As the court noted in its previous order, it is undisputed that CP Equity stopped making its payment obligations in April 2023. At the same time, two of the Original Alter Ego Defendants (CP Services and CP Supply) were formed. In 2024, one of those Defendants, as well as another of the Original Alter Ego Defendants (CP Services and CP Construction) issued statements announcing projects and suggesting that they had extensive funding—even though CP Equity continued to default on its repayment obligations. The court previously found: "Taken together, these allegations plausibly imply that CP Equity and the Guarantee Defendants transferred assets to two newly formed and two currently existing business entities owned by overlapping parties as a means to avoid CP Equity's payment obligations." (Id. at 12.)

Notably, the court did not find that the allegations against CP Supply SPV were insufficient to plausibly state a theory of alter ego liability, even though CP Supply SPV was formed in 2021 (before any alleged default on the Amended Note) and had not issued any press releases announcing projects or funding. Instead, the totality of the circumstances, taken in the light most favorable to TCS, suggested that CP Equity and the Guarantee Defendants were transferring assets between newly formed and existing business entities, thereby supporting an

inference that the observance of the corporate form "would sanction a fraud, promote injustice, or an inequitable result would follow." Norman, 596 P.2d at 1030.

These findings apply equally to the Additional Alter Ego Defendants. Although TCS does not allege that the Additional Alter Ego Defendants were formed after CP Equity defaulted on the Amended Note, nor are there any allegations that the Additional Alter Ego Defendants were issuing press releases about finances or construction projects during this time period, TCS does allege that, since April 2023, the Additional Alter Ego Defendants received "hundreds of thousands, if not millions of dollars" from CP Equity, the Guarantee Defendants, and the Original Alter Ego Defendants. (SAC ¶ 52.) At this stage of the action, "courts have repeatedly recognized that the plaintiff's showing is less burdensome when attempting to impute contacts through an alter ego as opposed to establishing liability based on the actions of an alter ego." Larada Sciences, 2023 WL 2043300, at *18. Given the allegations that substantial sums of money were being transferred between companies with overlapping ownership, employees, and the same business address, at a time when one company was defaulting on its repayment obligations and alleging that it had no assets, the court finds that TCS had adequately pleaded facts establishing the "fairness requirement" of the alter ego analysis.

The court's ruling accords with the Tenth Circuit's holding in Home-Stake Production Co. v. Talon Petroleum, C.A., 907 F.2d 1012 (10th Cir. 1990). There, the Tenth Circuit disagreed with the proposition that, "because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation." Id. at 1021. But the Tenth Circuit affirmed the inverse situation: namely, that "[w]hen one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former." Id. at 1020. Here, TCS alleges that JAG Financial is an

owner/operator of CP Supply and that Applegate Partnership is an owner/operator of CP Equity. It is therefore appropriate to attribute the minimum contacts of CP Equity and, as a plausible alter ego, CP Supply, to these parent companies.[3] As for JAG Group, which is controlled by Mr. Applegate, the court finds that TCS has sufficiently alleged a unity of interest such that the "fairness requirement" of the alter ego analysis has been met.

Finally, the court notes one additional reason why it is not persuaded that the Additional Alter Ego Defendants are truly separate entities: they are represented by the same counsel. As a sister court has recognized, this fact "casts doubt on whether arm's-length or legitimate transactions could have occurred between the entities. And it suggests either a conflict of interest for counsel or that [the relevant parties] have a unity of interest such that their separate personalities do not exist." Foreign Trade Corp. v. Otter Products, LLC, No. 14-cv-03133-JLK, 2020 WL 13450951, at *4 (D. Colo. Mar. 5, 2020).

For these reasons, the court may impute the minimum contacts that CP Equity and the Guarantee Defendants have with Utah to the Additional Alter Ego Defendants. Accordingly, the court finds that the exercise of jurisdiction over the Additional Alter Ego Defendants is appropriate.

## II. Utah Uniform Voidable Transfer Act

The court previously declined to dismiss the UVTA claim against the Defendants named in the First Amended Complaint, finding that "[t]he timeframe and allegations, while likely to be developed more fully during discovery, [were] sufficiently specific to state a claim for a fraudulent transfer." (ECF No. 40 at 12.) The allegations against the Additional Alter Ego

[3] Although it is not clear that CP Equity and CP Supply are completely controlled by their owner/operator entities, the other circumstances cited by the court support the attribution of minimum contacts to the owner/operator entities.

Defendants are similar. While the specific amounts and times of transfer remain unknown, TCS alleges that after April 2023, CP Equity, the Guarantee Defendants, and the Original Alter Ego Defendants transferred hundreds of thousands, if not millions, of dollars to the Additional Alter Ego Defendants. Assuming these allegations are true, as the court must when evaluating a motion to dismiss, the timing and circumstances are sufficient to suggest that these transfers were made to avoid CP Equity's payment obligations.

Moreover, as the court previously noted (see ECF No. 40 at 12–13), the plausible allegations that the Additional Alter Ego Defendants are, in fact, alter egos of the defaulting entity and its guarantors, provide support for TCS's allegations of fraudulent transfers under the UVTA. See, e.g., JENCO LC v. SJI LLC, 541 P.3d 321, 332–33 (Utah Ct. App. 2023) (noting that "badges of fraud" include evidence of transfer to insiders and concealment of the transfer); see also Utah Code Ann. § 25-6-202(2) (listing similar factors to establish that a transfer was made with "actual intent" to defraud a creditor).

The court therefore finds that TCS's allegations are pled with sufficient particularity to state a claim under the UVTA and to put the Additional Alter Ego Defendants on notice of the claims against them.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. The Additional Alter Ego Defendants' Motion to Dismiss (ECF No. 65) is DENIED.

2. The Defendants' Motion to Stay (ECF No. 67) is DENIED AS MOOT. The parties are scheduled to argue the other issues presented in the Defendants' Motion to Quash and

Motion for a Protective Order (ECF No. 67) on September 3, 2026, in front of the Honorable Cecilia M. Romero. (See Order Setting Hr'g, ECF No. 82.)

3. The court ORDERS the Plaintiff to file a status report within 14 days of the date of this order explaining how the Plaintiff intends to proceed on the claims against Defendant MatPro Supply, LLC. It is not clear whether MatPro has been served and MatPro has yet to enter an appearance.

DATED this 2nd day of September, 2026.

BY THE COURT:

Tena Campbell

Tena Campbell
United States District Judge